UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-CV-169-KSF

CAREY PORTMAN                                                                                                               PLAINTIFF

VS:                         **MEMORANDUM OPINION AND ORDER**

ERIC WILSON, ET AL.                                                                              DEFENDANTS

Plaintiff Carey Portman is confined in the Fort Dix Federal Correctional Institution which is located in Fort Dix, New Jersey. Portman has filed a *pro se* civil rights Complaint, entitled "Plaintiff's First Amended Complaint," R. 2, asserting condition of confinement claims under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Portman has paid the $350.00 filing fee. R. 6.

Portman alleges that two Bureau of Prisons ("BOP") officials employed at the Metropolitan Correctional Center located in Chicago, Illinois ("MCC-Chicago"), and various officials employed at the Federal Medical Center located in Lexington, Kentucky ("FMC-Lexington"), violated his constitutional rights, including but not limited to, the denial of proper medical care between 2007 and 2009.[1]

---

[1] Portman alleges that the following nine defendants were employed at FMC-Lexington at the relevant times: (1) Stephen Dewalt, former Warden; (2) Marvin Pitt, Case Manager; (3) Beverly Hoskins, Case Manager; (4) Schmal Jennings, Case Manager; (5) Scott Anderson, Lieutenant and Correctional Officer-in-Charge; (6) Brian Johnson, Captain and Chief Ranking Officer; (7) Michael Growse, Chief Medical Physician; (8) Allen Terris, Assistant Warden and Officer-in-Charge of the Health Services; and (9) Nickolas Alexakos, Chief Clergy. The Court collectively refers to these defendants as the "FMC-Lexington Defendants."
Portman alleges that the other two defendants, Eric Wilson, former Warden of MCC-Chicago and Paul Harvey, physician at MCC-Chicago, were employed at MCC-Chicago at other relevant times. The Court collectively refers to these defendants as the "MCC-Chicago Defendants."

For the reasons set forth below, the Court will dismiss without prejudice Portman's condition of confinement claims against the two MCC-Chicago Defendants because Portman has asserted identical claims against them in a civil action pending in the United States District Court for the Northern District of Illinois ("the Northern District of Illinois"); dismiss, *sua sponte*, Portman's condition of confinement claims against the FMC-Lexington Defendants arising between February of 2008, and November of 2008; dismiss, *sua sponte*, three of Portman's condition of confinement claims against the FMC-Lexington Defendants; and allow the remainder of Portman's condition of confinement claims against the FMC-Lexington Defendants to proceed.

**ALLEGATIONS OF THE COMPLAINT**
1. Claims from Late 2007 to February 2008

In the instant Complaint, Portman alleges he currently suffers from a serious neural condition known as trigeminal neuralgia, and that he had suffered from the condition forty years prior to the imposition of his 2007 federal criminal sentence.[2] Portman alleges that while he was confined in MCC-Chicago in late 2007 and early 2008, Defendant Paul Harvey, a physician employed at that prison, and Eric Wilson, who was then the Warden of MCC-Chicago, denied him medical treatment in violation of his rights guaranteed under the Eighth Amendment of the United States Constitution.

Specifically, Portman alleges that Harvey failed and refused to continue to administer certain pain medications which Portman had been taking for several years. *See* Complaint, R.

---

[2] On October 26, 2007, Portman was convicted of wire fraud and counterfeiting convictions in the Northern District of Illinois. *United States of America v. Portman*, 1:04-cr-00064 (N.D. Ill., 2004).

2

2, p. 4-5, ¶ ¶ 26-33. Portman alleges that Harvey's decision caused his neural condition to substantially and rapidly deteriorate. *Id*. Portman further alleges that Wilson "wantonly supported Harvey's reckless and outrageous treatment and medication changes." *Id*., p. 5.

### 2. Claims from February of 2008 to November 7, 2008

Portman then asserts a laundry list of claims challenging various conditions of his confinement once he was transferred to FMC-Lexington in February of 2008.[3] *See* Complaint, R. 2, pp. 4-12; and pp. 21-23. Summarized, Portman alleges that after he was transferred to FMC-Lexington, the Warden and other employees acting under his direction caused him to be wrongfully confined in a disciplinary area known as the hole; denied him proper medications to treat his neurological condition; denied him access to kosher food and religious articles; subjected him to verbal abuse and harassment; interfered with his incoming and outgoing mail; denied him access to the law library; denied him access to paper, envelopes, pencils, gel-pens, typewriters and telephones; conspired to withhold proper medical treatment; allowed, caused, and/or encouraged another FMC-Lexington inmate, Eric Walker, to physically assault him in September of 2008; and denied him the medical treatment necessary to treat the injuries incurred from Walker's assault. Portman alleges that injuries which he sustained as a result of Walker's attack have resulted in serious and permanent bodily injuries requiring eye surgery, and have caused him to experience pain and suffering and emotional distress.

### 3. Claims from November 7, 2008 to January 15, 2009

---

[3] Portman states that he was transferred to FMC-Lexington in February of 2007. *See* R. 2, p. 6, ¶ 38. That is incorrect because Portman's sixty-month federal criminal sentence was not even imposed until October 26, 2007. Portman probably intended to state that he was transferred to FMC-Lexington in February of 2008, not February of 2007.

Portman states that on November 7, 2008, he was transferred back to MCC-Chicago pursuant to a writ to appear at a court hearing in that district. R. 2, p. 12, ¶ 79. Portman alleges that while he was confined in MCC-Chicago, for approximately one to two months, Dr. Harvey resumed his actions, from late 2008 to early 2009, of ignoring his medical condition; failing to authorize the proper medical tests; refusing to administer the proper treatment and/or medications; and instructing the prison staff to ignore his medical condition. *Id.*, ¶ ¶ 80-81.

### 4. Claims from January 15, 2009 to March of 2009

On January 15, 2009, Portman was again transferred to FMC-Lexington where he states he was immediately placed back in "the hole," allegedly because inmate Eric Walker, his attacker from 2008, was still in the general population. *Id.*, pp. 12-13, ¶ ¶ 82-83. Portman claims that once again, FMC-Lexington officials denied him necessary medical treatment despite numerous complaints of blurred visions, excruciating pain, and other symptoms of distress which he conveyed to staff. *Id.*, ¶ ¶ 84-85.

Portman alleges that on February 10, 2009, he was finally examined by Dr. John Conklin, Associate Professor of Comprehensive Ophthalmology at the University of Kentucky Hospital and that Dr. Conklin advised him that further eye surgery would be needed to re-align Portman's eye socket. *Id.*, ¶ ¶ 86-87. On February 20, 2009, Portman was examined by another physician, Dr. Stephen J. Ryan, a neurologist at the University of Kentucky Hospital, who diagnosed Portman as having trigeminal neuralgia; confirmed that Portman needed to take 3200 mg. of the drug Neurontin, daily; and suggested that Portman could be a candidate for a "gamma knife" surgical procedure. *Id.*, ¶ ¶ 89-90. According to Portman, the FMC-Lexington defendants failed and refused to authorize any procedures, or follow any of the other recommendations relating

to medications, offered by either Dr. Conklin or Dr. Ryan. *Id*., p. 14, ¶¶ 91-92.

Portman alleges that in March of 2009, he sent numerous complaints to the Department of Justice regarding alleged sexual misconduct by Defendants Pitt, Hoskins, Jennings and Johnson with other federal employees and/or inmates. *Id*., p. 15-16, ¶ 93. Portman alleges that these defendants retaliated against him by placing him in the hole. *Id*. ¶¶ 94-96. While confined there, Portman alleges that another inmate, Donald Zawada, informed him that Defendants Dewalt, Johnson and Pitt had instructed Eric Walker to assault him in September of 2008; had allowed Walker to remain in the general population of the prison; and had allowed Walker to go unpunished for the assault. *Id*., ¶¶ 97-99.

Portman concluded his Complaint by reiterating, at pages 21-28, all of the numerous factual allegations which he had previously asserted in preceding passages, *i.e.*, claims of denied medical treatment; denied access to religious items; denied access to kosher foods; denied access to various writing and paper supplies and law books; and interference with his mail. However, Portman asserted, in "catch all" fashion, several additional claims, without providing the date on which they allegedly occurred. Portman alleged as follows:

(1) that the defendants had verbally abused him by harassing him about his Jewish faith, R. 2, p. 22, ¶¶ 111(c)-(d) and p. 27, ¶ 116(m);

(2) subjected him to potential bodily injury by exposing him to asbestos poisoning and various communicable diseases from other inmates such as HIV, MRSA, staph infection and other poisons in the air. *Id*., p, 26 ¶ 115(k)-(l); and

(3) denied him access to telephones so that he could confer with his attorneys and/or report allegedly illegal activities by FMC-Lexington staff. *Id*., pp. 26-27, ¶¶115(I) and (j).

5

# RELATED CIVIL LITIGATION

By accessing the Public Access to Court Electronic Records ("PACER") website, this Court takes judicial notice of the fact that Portman originally asserted all of the foregoing claims (and additional claims) against the same defendants named in this action (and additional defendants) in a 65-page Complaint which he recently filed in the Northern District of Illinois, Chicago Division. *Portman v. Federal Bureau of Prisons*, No. 09-CV-5616 (N.D. Ill.) ("the Northern District of Illinois Action"). On March 16, 2010, Portman supplemented his original 65-page Complaint filed there with an "Amended Complaint," which was the same "Amended Complaint" which Portman filed in this Court on May 21, 2010.[4]

On March 26, 2010, Judge Robert W. Gettleman, the presiding judge in the Northern District of Illinois Action, issued a "Minute Entry" in which he made several rulings. In the "Statement" section of that Minute Entry, he allowed Portman's medical claims against Paul Harvey and Eric Wilson, which arose while he was confined at MCC-Chicago to proceed; dismissed Portman's March 16, 2010, First Amended Complaint and terminated the FMC-Lexington Defendants against whom Portman had asserted conditions of confinement claims; advised Portman that his claims against the FMC-Lexington Defendants should be filed in the Eastern District of Kentucky; appointed counsel for Portman in the Northern District of Illinois Action; and directed appointed counsel to file within sixty days a Second Amended Complaint

---

[4] In both the Complaint filed in this action (entitled "Plaintiff's First Amended Complaint"), R. 2, and in the same document filed as docket entry #18 in the Northern District of Illinois Action on March 18, 2010, Portman referred to "Case Number 09 C 5616,"; "Judge Gettleman,"; and "Mag. Judge Valdez." Furthermore, on May 21, 2010, the same day on which Portman filed the instant civil action, he filed a motion in the Northern District of Illinois Action seeking permission to file a second Amended Complaint. *Id.*, R. 22.

complying with Federal Rule of Civil Procedure 11 and asserting claims having a nexus to the MCC-Chicago Defendants. *See id*, No. 19, pp. 1-2.

In response to that Minute Entry, Portman's counsel filed a Second Amended Complaint on June 25, 2010, naming only Paul Harvey and Eric Wilson as defendants and asserting only claims related to Portman's two prior periods of confinement in MCC-Chicago. *Id*., R. 26. On that same date, the Clerk of the Northern District of Illinois then designated all of the other defendants in that action, *other* than Harvey and Wilson, who had not already been terminated as defendants, as "Terminated"as of June 25, 2010.[5]

**DISCUSSION**
1. <u>Claims Asserted Against MCC-Chicago Defendants
Paul Harvey and Eric Wilson Between:
(a) Late 2007 and February 2008;
and (b) November 7, 2008 and January 15, 2009</u>

Portman asserts two separate sets of conditions of confinement claims, mostly medical in nature, against Defendants Paul Harvey and former MCC-Chicago Warden Eric Wilson: (1) claims which arose between late 2007 and February 2008, when Portman was confined in MCC-Chicago; and (2) claims which arose between November 7, 2008 and January 15, 2009, when Portman was subsequently transferred back to, and confined in, MCC-Chicago. For various reasons, this Court cannot entertain Portman's claims asserted against either Harvey or Wilson.

First, this Court lacks *in personam* jurisdiction over Harvey, and as discussed below, Portman cannot maintain an official capacity claim for damages against Harvey. A court cannot

---

[5] The upper right hand corner entry of the CM/ECF cover sheet from the Northern District of Illinois action suggests that the entire case has been terminated, as it reads: "Date Terminated: June 25, 2010." However, the remainder of the cover sheet and the docket entries substantiate that the Northern District of Illinois is in fact currently pending with respect to Portman's claims against Harvey and Wilson. Neither have been terminated as defendants.

7

exercise personal jurisdiction over a defendant unless two conditions are satisfied: (1) the exercise of personal jurisdiction must be authorized by the forum state's long-arm statute; and (2) the exercise of personal jurisdiction must comport with constitutional due process. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Courts sitting in Kentucky, however, can collapse the entire analysis into the second prong since the extent of personal jurisdiction allowed by Kentucky's long-arm statute is coterminous with the extent allowed by due process. *See Cummings v. Pitman*, 239 S.W.3d 77, 84-85 (Ky. 2007).

An exercise of personal jurisdiction comports with due process when three requirements are satisfied: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air Prods. & Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

These requirements cannot be satisfied with respect to Harvey, whose only alleged actions consisted of denying Portman proper medical care during two different time-periods when Portman was confined in MCC-Chicago. As for Eric Wilson, this Court does have personal jurisdiction over him because he is currently the Warden of a federal prison located in this district. However, considerations of judicial economy counsel against allowing Portman's condition of confinement claims against Harvey and Wilson, which allegedly arose in Illinois in 2007; 2008; and early 2009, to proceed in this action.

Portman's claims against Harvey and Wilson allegedly occurred at the MCC-Chicago,

which is located in Illinois. Portman has already asserted identical claims against Harvey and Wilson in the pending Northern District of Illinois Action; first in his Complaint filed on September 10, 2009; then in his First Amended Complaint filed on March 16, 2010; and finally, in his most recent Second Amended Complaint, filed in that action on June 25, 2010.

When a substantially similar matter is pending in two federal courts, the "first-to-file" rule determines which court should proceed to judgment. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment. *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Ass's, Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001). The first-to-file rule is an equitable rule, and a discretionary one. *Id*. at 437. The rule encourages comity among federal courts of equal rank. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007).

"Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id*. Applying that criteria to Portman, his actions of simultaneously pursuing the same claims against Harvey and Wilson in two federal different courts constitute "inequitable conduct, bad faith ... and forum shopping." *Zide Sport Shop*, 16 Fed. Appx. at 437. It would be inequitable to require Harvey and Wilson to defend the same claims in two different federal courts, and to require two federal courts, each with scant resources and heavy case loads, to administer two different cases wherein the same plaintiff raised the same set of claims against the same defendants.[6]

---

[6] Judge Gettelman agrees with this assessment. In the Statement portion of his March 26, 2010, Minute Entry in the Northern District of Illinois Action, he aptly observed as follows:

Furthermore, any witnesses and documents related to Portman's two periods of confinement in MCC-Chicago, and his resulting claims against Harvey and Wilson, would be located in the Northern District of Illinois. To the extent that Portman complains of actions alleged to have occurred at MCC-Chicago in between 2007 and 2009, the court deciding those claims will be required to apply the Illinois statute of limitations, which may be determinative in this matter. *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985). State law determines the length of the statute of limitations period for *Bivens* actions. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005); *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir. 1987).

The first-to-file rule allows a court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court. *Dimmer Enterprises, Inc. v. Atlantic Imports, Inc.*, 478 F. Supp.2d 983, 989 (S. D. Ohio 2007). When a court concludes that a party's actions implicate the first-to-file rule, it may, in its discretion transfer, dismiss or stay the second suit. *Harris County v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 319 (5th Cir. 1999).

This Court determines that the interests of justice would be served by dismissing without prejudice Portman's condition of confinement claims asserted against Harvey and Wilson in this action. He will suffer no prejudice, because he has already asserted the same claims in the

---

**Despite the court's admonitions to pursue a single, core claim,** *see* **Minute Order of September 22, 2009, the plaintiff has drafted an amended complaint that still contains a myriad of claims against officials at two different correctional facilities. Under** *George v. Smith***, 507 F.3d 605, 606-07 (7th Cir. 2007), the amended complaint containing misjoined claims and defendants cannot stand. Under this case number, the plaintiff may proceed only on his medical claim against the MCC defendants**. Any other claims the plaintiff may wish to prosecute concerning the conditions of his confinement at the Federal Medical Center in Lexington, Kentucky, must be brought in separate lawsuits and filed in the U.S. District Court for the Eastern District of Kentucky. (emphasis added).

10

pending Northern District of Illinois Action. The Clerk of the Court will be directed to "terminate" Paul Harvey and Eric Wilson as defendants in this proceeding.

## 2. FMC-Lexington Condition of Confinement Claims: February of 2008 to November 7, 2008

A complaint may be dismissed for failure to state a claim if "it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, ___U.S. ___, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly* at 570.

Portman's condition of confinement claims alleged to have arisen at FMC-Lexington between February of 2008 and November 7, 2008, do not satisfy this criteria because they are barred by the applicable statute of limitations. To determine the statute of limitations in a *Bivens* action, the Court applies the most analogous statute of limitations from the state where the claim arose. *Baker v. Mukasey*, 287 Fed. Appx. 422, 424 (6th Cir. 2008).

These particular claims arose in Kentucky, where a one-year statute of limitations applies. Ky. Rev. Stat. Ann. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Federal law establishes that the statute of limitations accrues when the plaintiff knew or should have known of the injury that

11

forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500-01(6th Cir. 2001); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). While the time during which a federal prisoner exhausts his BOP administrative remedies tolls the one-year statute of limitations, *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000), the tolling of the statute of limitations is an equitable remedy which requires diligence on the part of the litigant seeking to toll the statute of limitations. *Irwin v. Dept. of Veterans' Affairs*, 498 U.S. 89, 96 (1990); *Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002).

Even assuming that Portman administratively exhausted each and every aspect of his FMC-Lexington condition of confinement claims which arose between February of 2008 and November 7, 2008, and further broadly assuming that the exhaustion process took an entire year for each separate event during this particular time-period, Portman would have been required to file suit on any and all of these specific claims on or before November 7, 2009, at the latest. Portman did not, however, file the instant *Bivens* action until May 21, 2010, over a year and a half after the last complained-of event during this time span. Giving Portman every benefit of the doubt, his condition of confinement claims alleged to have arisen at FMC-Lexington between February of 2008 and November 7, 2008, are clearly time-barred.

The fact that Portman asserted these particular claims against FMC-Lexington Defendants in the Northern District of Illinois Action on September 10, 2009, does not save the claims. Judge Gettleman subsequently dismissed those claims in the Minute Entry of March 26, 2010. In this circuit, the filing of a complaint which is later dismissed without prejudice does not toll the statute of limitations. *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987). A dismissal without prejudice "leaves the situation the same as if the suit had never been brought

. . ." *Id*. (citing *Bomer v. Ribicoff*, 304 F.2d 427 (6th Cir.1962)).

Further, if the period of limitations has run by the time of a dismissal without prejudice, any new action is generally untimely. *Wilson*, 815 F.2d at 28 (citing *Harris v. City of Canton, Ohio*, 725 F.2d 371, 376-77 (6th Cir.1984)); *Wallace v. Wheeling-Pittsburgh Steel Corp.*, No. 2:08-CV-261, 2008 WL 4347358, at *3 (S.D. Ohio September 19, 2008). These claims will therefore be dismissed with prejudice as time-barred.

### 2. FMC-Lexington Official Capacity Condition of Confinement Claims: January 15, 2009 to March of 2009

Portman has asserted claims against all of the individually named FMC-Lexington Defendants in their *official* capacities. These allegations also fail to state a claim upon which relief can be granted because "a *Bivens* claim may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). As a result, any claims for damages against the FMC-Lexington Defendants in their official capacities will be dismissed with prejudice.

### 3. FMC-Lexington Individual Capacity Condition of Confinement Claims: January 15, 2009 to March of 2009

Portman alleges that numerous FMC-Lexington Defendants violated his various constitutional rights between January 15, 2009 and March of 2009. As previously noted, these alleged deprivations consisted of denied medical care; improper placement in "the hole"; retaliatory actions caused by his alerting BOP officials that FMC-Lexington officials were engaged in alleged sexual improprieties; verbal harassment based upon his Jewish religion; denied access to religious items; denied access to kosher foods; denied access to various writing and paper supplies and law books; interference with his mail; potential bodily injury from

exposure to asbestos, communicable diseases from inmates, and poisons in the air; and denied access to telephones preventing communication with his attorneys and the reporting of allegedly illegal activities by FMC-Lexington staff

The Court will dismiss, *sua sponte*, three of Portman's claims alleged to have occurred during this time-period. First, claims of verbal abuse and threats do not rise to the level of an Eighth Amendment constitutional violation. An inmate has no right to be free from verbal abuse, *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987), and minor threats do not rise to the level of a constitutional violation. *Carney v. Craven*, 40 Fed. Appx. 48, 50 (6th Cir. 2002). These claims will be dismissed on the merits, with prejudice.

Second, an inmate has no right to unlimited telephone use, *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), and his right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution. *Arney v. Simmons*, 26 F. Supp.2d 1288, 1293 (D. Kan. 1998) (citing *Washington*, 35 F.3d at 1100). To the extent that Portman complains of denied telephone access, he states no valid First or Eighth Amendment claim. As for his Sixth Amendment argument that lack of telephone access prevented him from conferring with his attorney, Portman does not allege that he was denied either visitation rights or the opportunity to exchange correspondence with his attorney. This claim will also be dismissed, with prejudice.

As for Portman's allegation of sexual improprieties by FMC-Lexington staff members, and that he was prevented from reporting such action, Portman does not allege that he was the victim of such action, only that prison officials were undertaking such action against other unidentified inmates. To the extent that Portman is attempts to assert the rights of other inmates,

he lacks standing to represent the interests of others. *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-55 (1979); *Connection Distributing Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998). Even if the Court were to accept as true Portman's broad allegation that illegal activities were occurring at FMC-Lexington, prosecutors are vested with the discretion to take appropriate legal action, not inmates.

Third, to the extent that Portman complains about being placed in "the hole" during this time period, prisoners enjoy no Fifth or Eighth Amendment right to remain free from confinement in segregated housing. The Supreme Court has established that in order for any condition of confinement to qualify as an Eighth Amendment violation, the condition must either extend the duration of the inmates' confinement or impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Portman has not alleged the loss of any good time credit which would have either extended the duration of his sentence or caused an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-86; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Moreover, an inmate claiming an atypical hardship must demonstrate the existence of a severe deprivation, such as the denial of "essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Neal v. Miller*, 778 F.Supp. 378, 382-83 (W.D. Mich. 1991) (citing *Rhodes v. Chapman*, 452 U.S. at 347-48)). In *Sandin*, the Supreme Court stated that extended placement in disciplinary segregation and transfers to higher security prisons are "ordinary incidents of prison life." *Sandin*, 515 U.S. at 483; *see also Merchant v.*

*Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. 2002); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997). Thus, Portman's claim that his temporary placement in "the hole" violated either his Fifth Amendment due process rights, or his Eighth Amendment right to remain free from cruel and unusual punishment, simply lacks merit. Portman's Fifth and Eighth Amendment claims on this issue will be dismissed with prejudice.

As for the remainder of Portman's condition of confinement claims from FMC-Lexington between January 15, 2009, and March of 2009, it is unclear if Portman properly exhausted any or all of these claims. Since the last event he raised allegedly transpired in March of 2009, it is possible that Portman could have exhausted some or all of these claims and still have filed this action within one year of the completion of the BOP's exhaustion process. In an abundance of caution, the defendants will be required to respond to the remaining claims, *i.e.*, those alleged to have arisen at FMC-Lexington between January 15, 2009, and March of 2009.

## CONCLUSION

Accordingly**, IT IS ORDERED** as follows:

(1) Plaintiff Carey Portman's condition of confinement claims asserted against Defendants Paul Harvey and Eric Wilson are **DISMISSED WITHOUT PREJUDICE**

(2) The Clerk of the Court is directed to "terminate" Paul Harvey and Eric Wilson as defendants to this proceeding and to note that designation on the CM/ECF docket sheet.

(3) All constitutional claims asserted by *pro se* Plaintiff Carey Portman against the the remaining nine FMC-Lexington defendants, in their *official* capacities, are **DISMISSED WITH PREJUDICE**, and the Clerk of the Court is directed to note the dismissal of these claims in the CM/ECF docket sheet.

(4) Portman's First, Fifth and Eighth Amendment condition of confinement claims, alleged to have arisen at FMC-Lexington between February of 2008 and November of 2008, asserted against the nine FMC-Lexington Defendants, in their individual capacities, are **DISMISSED WITH PREJUDICE.**

(5) Portman's First, Fifth and Eighth Amendment condition of confinement claims alleged to have arisen at FMC-Lexington between January 15, 2009, and March of 2009, consisting of alleged verbal abuse, denied access to telephones, and placement in segregation, *i.e.* "the hole," asserted against the nine FMC-Lexington Defendants, in their individual capacities, are **DISMISSED WITH PREJUDICE.**

(6) Portman's remaining condition of confinement claims against the remaining nine FMC-Lexington Defendants, in their individual capacities, shall proceed and the Lexington Clerk's Office shall prepare the documents necessary for service of process upon the following persons: (1) Stephen Dewalt, former Warden; (2) Marvin Pitt, Case Manager; (3) Beverly Hoskins, Case Manager; (4) Schmal Jennings, Case Manager; (5) Scott Anderson, Lieutenant and Correctional Officer- in-Charge; (6) Brian Johnson, Captain and Chief Ranking Officer; (7) Michael Growse, Chief Medical Physician; (8) Allen Terris, Assistant Warden and Officer-in-Charge of the Health Services; and (9) Nickolas Alexakos, Chief Clergy.

(7) For each identified defendant, the Clerk shall prepare the necessary number of "Service Packets" consisting of the following documents:

        a.     Completed summons form;

        b.     Complaint [Record No. 2];

        c.     This Memorandum Opinion and Order

    d.  Completed USM Form 285.

If the Clerk is unable to accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

 (8) For each identified defendant, the Clerk shall also prepare three (3) Service Packets to be provided to the USM Office in Lexington, Kentucky, addressed as follows:

   a.  to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

   b.  to the Office of the Attorney General of the United States in Washington, D.C.; and

   c.  for personal service at the BOP Central office in Washington, D.C.

 (9) The Lexington Clerk shall send the required Service Packets for each identified defendant by certified mail to USM Office in Lexington, Kentucky. The Clerk shall enter the certified mail receipt into the record and note in the docket the date that the Service Packet was delivered to the USM Office.

 (10) The USM Office shall serve each of the identified defendants by:

   a.  Sending a Service Packet for each identified defendant by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

   b.  Sending a Service Packet for each identified defendant by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.;

   c.  The BOP General Counsel; and

   d.  Personally serving a Service Packet upon the named defendants through

arrangement with the Federal Bureau of Prisons.

The USM Office is responsible for ensuring that each defendant is successfully served with process. In the event that an attempt at service upon a defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(11) Within 40 days of the date of entry of this Order, the USM Office shall send a Service Report to the Lexington Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service has been accomplished with respect to each identified defendant.

    a. For each defendant to be served by certified mail, the Service Report shall include:

        1. a copy of the green card showing proof of service; or

        2. a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

    b. For each defendant to be personally served, the Service Report shall indicate:

        1. that the defendant was successfully served personally, or

        2. a statement explaining what efforts are being taken to locate the defendant and accomplish personal service.

(12) Portman shall immediately advise the Lexington Clerk's Office of any change in his current mailing address. Failure to do so may result in dismissal of this case.

(13) Portman must communicate with the Court solely through notices or motions filed

with the Lexington Clerk's Office. The Court will disregard correspondence sent directly to the judge's chambers.

(14) For every further pleading or other document he wishes to submit to the Court, Portman shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. Portman shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel. **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk, or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court**.

(15) The Clerk of the Court is directed to transmit a copy of this Memorandum, Opinion and Order to the Clerk of the United States District Court for the Northern District of Illinois, Chicago Division, referencing *Portman v. Bureau of Prisons*, Case No. 1:09-CV-05616.

This July 19, 2010.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**