UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CAREY PORTMAN,                                      |
                                                    |
        Plaintiff,                            |          Civil Action No. 10-169-KSF
                                                    |
v.                                                  |
                                                    |       **MEMORANDUM OPINION**
ERIC WILSON, *et al*.,                              |           **AND ORDER**
                                                    |
        Defendants.                           |

\*\*\*\*\*  \*\*\*\*\*  \*\*\*\*\*  \*\*\*\*\*

The Court considers the following motions:

(1)     The Motion to Dismiss for Insufficient Service of Process (the "Motion to Dismiss") filed by federal Defendants Scott Anderson, Stephen Dewalt, Brian Johnson, Marvin Pitt and Allen Terris [R. 19];

(2)     The Motion to Dismiss or in the Alternative, Motion for Summary Judgment (the "Motion for Summary Judgment") filed by federal Defendants Nick Alexakos, Michael Growse, Beverly Hoskins and Schmal Jennings[1] [R. 28]; and

(3)     The Motion for Special Service of Process filed by *pro se* Plaintiff Carey Portman [R. 34].

---

[1]     Because these four FMC-Lexington Defendants have included additional material in support of their motion, and have relied upon materials extrinsic to the Complaint, the Court treats their dispositive motion  as one for summary judgment under Federal Rule of Civil Procedure Rule 56.  *See* Fed. R. Civ. P. 12(d);  *Mays v. Buckeye Rural Elec. Co-op, Inc*., 277 F.3d 873, 877 (6th Cir. 2002); *Ball v. Union Carbide Corp*., 385 F.3d 713, 719 (6th Cir. 2004).

1

For the reasons set forth below, the Court will grant both the Motion to Dismiss and the Motion for Summary Judgment; deny Portman's motion for special service; and dismiss this action from the active docket.

PROCEDURAL HISTORY

On May 21, 2010, Portman filed this action under 28 U.S.C. § 1331 pursuant to the doctrine established in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 2].[2]  Portman asserted various constitutional claims against not only various officials and employees of the Federal Medical Center-Lexington ("FMC-Lexington") in Lexington, Kentucky,[3] but also against employees of other federal institutions located outside of Kentucky.

In his Complaint, Portman alleged that in 2008, Eric Walker, another FMC-Lexington inmate, physically attacked him and inflicted serious bodily injuries, specifically, that Walker injured his eye socket. On January 15, 2009, Portman was again transferred to FMC-Lexington where he states he was immediately placed back in "the hole," allegedly because Eric Walker, his attacker from 2008, was still in the general population. Portman claims that FMC-Lexington

---

[2]      When Portman filed this action on May 21, 2010, he was confined in the Fort Dix Federal Correctional Institution which is located in Fort Dix, New Jersey.  During the pendency of this action, Portman filed numerous change of address notices.  The most recent address Portman provided, on June 20, 2011, is 2603 NW 103 Road Avenue, Apartment 302, Sunrise, Florida, 33322. [R. 41].  It appears that Portman is no longer in the custody of the Bureau of Prisons ("BOP").

[3]      Portman asserted constitutional claims against the following FMC-Lexington Defendants: (1) Stephen Dewalt, former Warden; (2) Jason A. Terris, former Clinical Programs Associate Warden; (3) Michael Growse, Clinical Director; (4) Marvin Pitt, former Unit Manager; (5) Brian Johnson, former Captain; (6) Scott Anderson, former Operations Lieutenant; (7) Beverly Hoskins, Case Manager; (8) Shamahl Jennings, Correctional Counselor; and (9) Nicholas Alexakos, Supervisory Chaplain.

officials again denied him necessary medical treatment despite numerous complaints of blurred vision, excruciating pain and other symptoms of distress.

Portman alleged that on February 10, 2009, he was finally examined by Dr. John Conklin, Associate Professor of Comprehensive Ophthalmology at the University of Kentucky Hospital, and that Dr. Conklin advised him that further eye surgery would be needed to re-align Portman's eye socket. On February 20, 2009, Portman was examined by another physician, Dr. Stephen J. Ryan, a neurologist at the University of Kentucky Hospital, who diagnosed him as having trigeminal neuralgia; confirmed that Portman needed to take 3200 mg. of the drug Neurontin,[4] daily; and suggested that Portman be considered as a candidate for a "gamma knife" surgical procedure. Portman alleged that the FMC-Lexington defendants refused to authorize any procedures or to follow Drs. Conklin's and Ryan's recommendations regarding medications.

Portman alleges that in March of 2009, he sent numerous complaints to the Department of Justice regarding alleged sexual misconduct by Defendants Pitt, Hoskins, Jennings and Johnson with other federal employees and/or inmates, and that the FMC-Lexington Defendants retaliated against him by placing him in the hole. Portman alleged that while confined there, another inmate, Donald Zawada, informed him that Defendants Dewalt, Johnson and Pitt had instructed Eric Walker to assault him in September of 2008; had allowed Walker to remain in the general population of the prison; and had allowed Walker to go unpunished for the assault.

---

[4]      Neurontin (gabapentin) is a medication used to control partial seizures in adults who suffer from epilepsy and to treat certain types of nerve pain. *See* Rios Declaration, R. 26, p.2, n.2.

3

Portman demanded unspecified compensatory and punitive damages from the defendants, jointly and severally; his costs, legal fees (even though he is proceeding pro se), a jury trial, and any other relief the Court deemed appropriate.

After screening the Complaint, the Court entered a Memorandum Opinion and Order on July 19, 2010 dismissing the two out-of-state defendants; dismissing several of Portman's claims against the FMC-Lexington Defendants, and limiting the case to include only eight claims Portman asserted against the FMC-Lexington defendants, in their individual capacities, alleged to have occurred between January 8, 2009 and March 30, 2009. [R. 7.]. The Court summarized Portman's eight claims against the FMC-Lexington Defendants as follows:

(1)     That they demonstrated deliberate indifference to his serious medical needs by denying him medical care for his trigeminal neuralgia, blurred vision, pain and other symptoms, in violation of his Eighth Amendment right to be free from cruel and unusual punishment;

(2)     That they retaliated against him for (a) filing complaints regarding illegal and/or unethical sexual indiscretions by staff and (b) exercising his right to practice his religious beliefs in violation of his First Amendment rights of access to the courts and practice of religion;

(3)     That they denied him kosher foods and accessories and restricted his ability to practice his Jewish religion for "several prolonged periods" in violation of his First Amendment right to freely practice his religion;

(4)     That they restricted his right of access to counsel and/or the courts by denying him gel pens, paper, envelopes, law books, typewriters and the like in violation of his First Amendment right of access to the courts and/or his Sixth Amendment right to counsel;

4

(5)     That they caused him to be exposed to asbestos and to "asbestos poisoning in the air"in violation of his Eighth Amendment right to be free from cruel and unusual punishment;

(6)     That they caused him to be exposed to HIV, MRSA, staph infection and various other communicable diseases and poisons in violation of his Eighth Amendment rights;

(7)     That they obstructed, tampered with, delayed and/or destroyed his mail in violation of his First Amendment rights; and

(8)     That they conspired to file and process false incident reports against him in order to tarnish his credibility in violation of his Fifth Amendment right to due process of law. [*Id*., p. 7].

On August 16, 2010, the United States Marshal's Service ("USMS") returned as "Unexecuted" the summons issued for five of the FMC-Lexington Defendants (former Warden Stephen Dewalt, Scott Anderson, Brian Johnson, Martin Pitt and Allen Terris), noting on each of the returned summonses that individuals ordered to be served were no longer employed at FMC-Lexington. [R. 12]. On September 8, 2010, the Clerk of the Court made a docket notation into the docket stating that the summons were returned unexecuted as to Anderson, Dewalt, Johnson, Pitt and Terris, and that "[p]arties have all left employment at FMC Lexington." [R. 15.]. The other four FMC-Lexington defendants were successfully served with process. *See* R. 11; R. 14.

**DISPOSITIVE MOTIONS**

1. Motion to Dismiss; Portman's Response; and Defendants' Reply

Without waiving any defenses or objections to jurisdiction, venue or the sufficiency of service of process, or any other defenses, Dewalt, Anderson, Johnson, Pitt and Allen Terris (the

5

five FMC-Lexington Defendants who were not served with process), entered a limited appearance for the purpose of moving to dismiss the claims against them on the grounds that they have not been served with process in compliance with Federal Rule of Civil Procedure 4.  They argue that because Portman has asserted claims against them in their individual capacities, service of process cannot be waived and that Portman had until  November 16, 2010 (120 days after the Court entered its July 19, 2010 Memorandum Opinion and Order) in which to effectuate service of process on them pursuant to Federal Rule of Civil Procedure 4(m), which states that "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m).  The defendants argue that Portman has not established good cause for failing to serve them within that time.

Portman objected to the Motion to Dismiss, alleging that based upon "information and belief," Defendants Marvin Pitt, Brian Johnson, and Jason Allen Terris had all been employed at FMC-Lexington through September 2010, but that during September 2010, they had evaded service of process after learning that they had been named as defendants in this action.  Portman stated that after September 2010, Pitt, Johnson and Terris were reassigned to other BOP institutions, which he identified for each defendant, and that the USMS could serve them with process at those addresses.  Portman moved the Court to specifically find that these three defendants had evaded service of process, and to order the USMS to serve them at their new

6

BOP addresses, or alternatively, to order the United States Attorney's office to accept service of process on behalf the five unserved FMC-Lexington Defendants.

Portman further stated that, as for former FMC-Lexington Warden Stephen Dewalt, the BOP's Employee Benefits Department of the Sentence Designation and Computation Center, located in Grand Prairie, Texas, has an address at which Dewalt could be served with process;[5] and that the BOP should be required to disclose that address to the Court. He also asked the Court to order the USMS to effectuate "special" service of process on Dewalt at his residence. *See* R. 33; R. 34; and R. 39.

In their reply to Portman's response and motion seeking special service, the five defendants argued that based on the docket sheet, which documented the unsuccessful return of summonses by the USMS on August 16, 2010, Portman either knew or should have known on that date, or by September 8, 2010 at the latest, that they could not be served at FMC-Lexington. They argued that Portman had not shown good cause for failing to have them served within 120 days of July 19, 2010, and that if he wanted them to be served at other addresses by other means within 120 days of July 19, 2010, he should not have waited until February 25, 2011, some four to five months later, to request an Order directing "special" service on them.

Finally, they reiterated that it is the plaintiff's responsibility to ensure that defendants, sued in their individual capacities, are properly served under Rule 4; that a defendant is not required to waive personal service of process; and that in accordance with that principle, district

---

[5]     Portman alleges that Dewalt retired from the BOP on June 30, 2009.

7

courts are not obligated to seek out the address of unserved defendants so that service can be effectuated on them. *See* [R. 35].

In Portman's March 30, 2011 Sur-reply to the response to his motion seeking special service, Portman alleged that the United States Attorney's Office for the Eastern District of Kentucky ("USAO-EDKY") has (1) improperly filed motions, responses and petitions on behalf of the unserved FMC-Lexington defendants in violation of unspecified provisions of the "Federal Code of Procedure;" (2) misquoted and misrepresented his statements; (3) had ". . . requisite knowledge of the parties and their divisive act to evade and elude service of process as ordered by this Honorable Court;" (4) failed to send him information about the return of service of process from parties ". . . as ordered by this Honorable Court;" and (5) "orchestrated and conspired with parties . . . to elude and evade process and then filed motions on their behalf to prematurely cause the plaintiff's lawsuit to be dismissed. [R. 39, pp. 1-2].

2.   The Motion for Summary Judgment

On January 18, 2011, Michael Growse, Beverly Hoskins, Schmal Jennings and Nicholas Alexakos, the four FMC-Lexington Defendants who have been served with process, filed the Motion for Summary Judgment. [R. 24]. They argue that (1) Portman's seven non-medical constitutional claims should be dismissed for his failure to fully and completely exhaust his administrative remedies as required by 28 C. F. R. § 542.10-19; (2) Portman failed to establish that between January 8, 2009 and March 20, 2009 he was denied necessary medical treatment in violation of the Eighth Amendment; (3) Portman failed to demonstrate that between January 8, 2009 and March 20, 2009 any of them personally violated his Eighth Amendment rights either

8

by denying him necessary medical treatment or subjecting him to adverse conditions of confinement at FMC-Lexington; and (4) qualified immunity shields them from *Bivens* liability. Portman has not responded to the Motion for Summary Judgment.[6]

**DISCUSSION**
1. <u>Motion to Dismiss</u>

The Motion to Dismiss will be granted because Portman has not shown good cause why timely service was not effectuated on the five FMC-Lexington Defendants who have not been served with process. Federal Rule of Civil Procedure 4(m) requires that service be completed within 120 days after the complaint's filing, or the Court must dismiss the action without prejudice against the defendant.

Dismissal is permitted where a plaintiff has failed to effect service within 120 days without good cause. *See* Fed. R. Civ. P. 12(b)(5); *Nafzinger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521-22 (6th Cir. 2006); *Young v. FSA*, No. 4:07CV-117-M, 2010 WL 583651, at **1-2 (W.D. Ky. Feb. 16, 2010) (dismissing complaint where plaintiff served federal agency but not United States Attorney's Office or Attorney General within 120 days). "Establishing good cause is the responsibility of the party opposing the motion to dismiss . . . and 'necessitates a

---

[6]     On January 10, 2011, Portman filed a "Notice of Change of Address,"in which he listed his address as being "Dismas House-CTC, 141 NW 1st Avenue, Dania, Florida, 33004." [R. 22]. When the FMC-Lexington Defendants filed the Motion for Summary Judgment eight days later, on January 18, 2011, their counsel certified that he had placed a copy of the motion in first class mail addressed to Portman at his Dania, Florida address. [R. 24, p. 2]. Counsel for the served FMC-Lexington defendants has filed nothing in the record indicating that the copy of the Motion for Summary Judgment he mailed to Portman on January 18, 2011 has been returned as "Undeliverable."

demonstration of why service was not made within the time constraints.'" *Nafzinger*, 467 F.3d at 521 (quoting *Habib v. Gen'l Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994)).

As these five defendants correctly argue, under Fed. R. Civ. P. 4(e) and 4(l)**,** it is the plaintiff's sole responsibility to ensure that federal officers sued in their individual capacities are personally served in accordance with the ordinary rules for service on individuals. *See Abel v. Harp*, 122 F. App'x 248, 250 (6th Cir. 2005); *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988). Absent such personal service or a voluntary waiver of service, a district court lacks jurisdiction to render judgment against defendants who have not been served. *Abel*, 122 F. App'x at 250 (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991)).

In this case, Portman failed to take action to have the unserved FMC-Lexington defendants served within the 120-day time period set forth in Rule 4(m). Assuming that Portman was convinced that Defendants Pitt, Johns and Terris were allegedly evading service of process in September 2010 (as he vehemently alleged in his two February 25, 2011 motions and related subsequent filing), he should have more closely monitored the docket sheet, through which he would have learned by September 8, 2010, at the latest, that these three defendants had not been served with process.

At that time, or soon thereafter, Portman could have apprised the Court prior to November 19, 2010 (the date on which the 120-day service period expired), of (a) his concern that these three defendants were evading service of process **and** (b) new BOP addresses where he thought these three defendants could be served within the 120-day period. But Portman took

10

no action to address the failed service of process on five of the FMC-Lexington Defendants until February 25, 2011, some four to five months after it was revealed in the docket sheet that service of process on these defendants had been unsuccessful.

Portman asserted, incorrectly, that the Court ordered and directed USAO-EDKY to send "filings that were made electronically to the plaintiff as he does not have access to electronic filing and can only receive filings by U.S. mail to his address of record." [R. 39, p. 1]. At no time did the Court enter such an Order. Portman further incorrectly alleged that the Court ordered the USAO-EDKY to send him docket information or otherwise apprise him of the status of service of process (if any) upon the various defendants named in this action. [*Id*.]. Again, at no time did the Court enter such an Order, and furthermore, the USAO-EDKY was not required to undertake such action on its own for any other reason.

Contrary to Portman's assertions, the responsibility to monitor the status of the service of process on the various defendants, and the obligation to ensure that they were all properly and timely served, was solely his. *Abel*, 122 F. App'x at 250. It is the plaintiff's responsibility to provide the Court with information sufficient to allow the United States Marshal's Service to serve a defendant. *Byrd v. Stone*, 94 F.3d 217 (6th Cir. 1997). As the defendants have noted, even confined plaintiffs who are relying on the United States Marshals for service of process "may not remain silent and do nothing to effectuate such service." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987), and that at a minimum, such plaintiffs "should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which [they have] knowledge." *Id*. *See also*, *Harris v. City of Cleveland*, 7 F. Appx. 452, 456 (6th Cir. 2001)

11

(affirming dismissal for failure to timely serve when plaintiff waited nearly ten months before attempting to obtain home addresses for defendants from their employer).

As at least one court has noted in reference to service of process, "[m]ere ignorance of the rules, or failure to keep track of dates is not good cause for failure to serve a party on time." *Scarton v. Charles*, 115 F.R.D. 567, 569 (E.D. Mich. 1987) (citing *Reynolds v. United States*, 782 F.2d 837 (9th Cir. 1986)). Likewise, another district court in this circuit concluded that a prisoner plaintiff ". . . could not sit by in silence when he knew that service had not been executed" and that "[his] silence and inaction do not constitute reasonable cooperation with the Marshal in order to ensure timely service." *Vandiver v. Martin*, 304 F. Supp.2d 934, 943 (E.D. Mich 2004). Because Portman failed to "request service upon the appropriate defendant[s] and attempt to remedy any apparent service defects of which [he had] knowledge," he has not shown good cause for his failure to serve these five defendants with process in the 120-day time frame set forth by Rule 4(m).

It is not the responsibility of either a district court, or of any defendant who has been served with process, to track down new addresses of any defendants who have not been served, or take other affirmative steps to ascertain addresses or whereabouts of any unserved defendants to ensure that they are served either in the proper manner or in the proper time frame. *Fitts v. Sicker*, 232 F. App'x. 436, 444 (6th Cir. 2007). *See also*, *Burke v. Morgan*, No. 06-CV-348-JMH, 2009 WL 1598420, at 2-4 (E.D. Ky. June 4, 2009) (denying a request to add Kentucky Department of Corrections, for the sole purpose of requiring it to provide or disclose addresses for defendants upon whom service had not been made); *Demonbreum v. Bureau of Prisons*, No.

08-CV-198-KSF 2011 WL 9298, at 2 (E.D. Ky. January 3, 2011); *Halloran v. Bake*r, 109 F. App'x. 830, 831 (8th Cir. 2004) (finding no abuse of discretion in dismissing complaint for lack of timely service where plaintiff failed to provide court with correct address for defendant).

Portman's objection to the USAO-EDKY entering an appearance on behalf of the five unserved FMC-Lexington defendants lacks merit.  Grounds for dismissal under Rule 12(b) are commonly decided on motions to dismiss, a practice which the Sixth Circuit and the Supreme Court have approved.  *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009); *Jones v. Bock*, 549 U.S. 199, 215 (2007).  Pursuant to Federal Rule of Civil Procedure 12(b)(4) and (5), a defendant is specifically permitted to enter a limited appearance for the purpose of filing a motion to dismiss alleging insufficiency of service of process.  *Brown v. Nabors*, No. 3:09-CV-0927, 2011 WL 2443882, at *10 (M.D. Tenn., June 15, 2011).  Contrary to Portman's claim, nothing in either the Local Rules of Court or the Federal Rules of Civil Procedure would prevent the USAO-EDKY from filing a motion to dismiss under Rule 4(b)(4),(5) objecting to adequacy of service of process on behalf of federal defendants named in an action in this district.

Portman also argued that because the USAO-EDKY office would have represented the five unserved FMC-Lexington defendants if they had been served, and because the USAO-EDKY was already essentially representing these defendants, service of process on them should effectively be waived for equitable reasons.  But again, these five defendants have not waived their right to object to insufficient service of process and "actual knowledge and lack of prejudice cannot take the place of legally sufficient service."  *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999).  The five unserved FMC-Lexington Defendants' limited appearance in this

13

action, to object to the sufficiency of service, cannot and does not cure Portman's failure to properly effect service of process on them.

Stephen Dewalt, Scott Anderson, Brian Johnson, Martin Pitt and Allen Terris have not been served with process within the 120-day window required under Federal Rules of Civil Procedure 4(e) and (m), and Portman has not shown good cause for failing to serve these defendants. Therefore, as none of them are before the Court, the *Bivens* claims against them will be dismissed. *See Demonbreum v. Bureau of Prisons*, No. 08-CV-198-KSF, 2011 WL 9298, at *2 (E.D. Ky. January 3, 2011); *Cosgrove v. Bureau of Prisons*, No. 7:09–CV-64-KKC (E.D. Ky.) (Order, R. 20, p. 8) (dismissing claims against federal defendants upon whom service of process had not been effectuated).

Accordingly, the Motion to Dismiss filed on behalf of FMC-Lexington Defendants Stephen Dewalt, Scott Anderson, Brian Johnson, Martin Pitt and Allen Terris [R. 19], will be granted, and Portman's Motion for Special Service of Process [R. 34] will be denied.

## 2. The Motion for Summary Judgment

The Motion for Summary Judgment filed by the four FMC-Lexington Defendants who have been served with process, Michael Growse, Beverly Hoskins, Schmal Jennings and Nicholas Alexakos, will be granted as to all of Portman's constitutional claims.

### A. Seven Non-Medical Condition of Confinement Claims

FMC-Lexington Defendants Growse, Hoskins, Jennings and Alexakos have adequately demonstrated that Portman's seven non-medical condition of confinement claims should be

14

dismissed without prejudice because Portman failed to exhaust his administrative remedies with respect to those claims prior to filing this action on May 21, 2010.

They have submitted the September 8, 2010 Declaration of Carlos J. Martinez, Senior Attorney at the BOP's Consolidated Legal Center in Lexington, Kentucky. [R. 24-2]. In his sworn Declaration, Martinez stated that, as of that date, Portman had filed a total of 133 Administrative Remedy submissions during his federal confinement; that of those 133 administrative submissions, only 70 submissions pertained to his confinement at FMC-Lexington; and that of those 70 remedies, Portman had only fully and completely exhausted one request for an administrative remedy, specifically, Administrative Remedy 525325, in which he alleged that the FMC-Lexington medical staff had been deliberately indifferent to his serious medical needs. *See id*. ¶ 6; Attachment B, Administrative Remedy Data.

Martinez acknowledged that Portman initiated the administrative exhaustion process as to two of his non-medical condition of confinement claims. *Id*., ¶ 5.[7]   Martinez explained, however, that because Portman failed to complete the next two steps of the BOP's administrative remedy process (appealing the Warden's adverse decision to the BOP Mid-Atlantic Regional Office ("MARO") and then to the BOP Central office) those two non-medical constitutional claims were, and remain, unexhausted. *See id*.; Attachment B, Administrative Remedy Data.

_____

[7]      Martinez noted that Portman attached to his Complaint Administrative Remedy 491364-F1, dated April 18, 2008, and Administrative Remedy 495619-F1, dated May 20, 2008, in which Portman complained that the FMC-Lexington Defendants had denied him his right to exercise his religious beliefs, by denying him kosher foods and accessories for the practice of the Jewish faith.

Therefore, of the eight constitutional claims Portman asserted in his Complaint, he administratively exhausted only one claim, Administrative Remedy 525325, in which he alleged that between January 8, 2009 and March 30, 2009, the FMC-Lexington medical staff denied him necessary medication, medical treatment and surgical procedures, and was deliberately indifferent to his serious medical needs.

Rule 56 requires that a plaintiff present "significant probative" evidence that supports his complaint and demonstrates the existence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). This means sufficient evidence from which a jury could reasonably find for him. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). A court must then determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Celotex*, 477 U.S. at 323. If one-sided, all other facts are rendered immaterial, and the defendants are entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 251-52.

Portman has submitted nothing in the record to controvert Martinez's sworn statement establishing that he failed to fully exhaust his seven non-medical *Bivens* claims by completing the BOP's administrative remedy process, and there is nothing in the Complaint which would dispute Martinez's Declaration on the issue. Pursuant to 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"), inmates challenging their conditions of confinement must exhaust their administrative remedies before pursuing a federal civil rights action.

Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

16

any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's "procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). That did not happen with respect to seven of Portman's eight claims alleging constitutional violations.

Pursuant to Martinez's uncontroverted Declaration, the Motion for Summary Judgment on these seven claims "is so one-sided that one party must prevail as a matter of law." Based upon Portman's undisputed failure to administratively exhaust seven of eight constitutional claims, the Court will enter summary judgment in favor of the Defendants Growse, Hoskins, Jennings and Alexakos as to Portman's seven non-medical conditions of confinement claims, specifically: (1) his various First Amendment right-of-access to courts claim; (2) his First Amendment claims relating to religious practices, religious personal items and kosher food; (3) his First Amendment retaliation claims; (4) his First Amendment claims alleging mail interference; (5) his Fifth Amendment due process claims alleging the filing of false disciplinary charges; (6) his First and/or Sixth Amendment claims alleging improper restrictions on his right to counsel; and (7) his Eighth Amendment conditions of confinement claims alleging improper exposure to asbestos, asbestos poisoning, HIV, MRSA, staph infection and other communicable diseases and poisons.

17

### B.  Eighth Amendment Medical/Deliberate Indifference Claims

The Court will grant the Motion for Summary Judgment as to Portman's exhausted medical claim alleging deliberate indifference to his medical needs.  FMC-Lexington Defendants Growse, Hoskins, Jennings and Alexakos have adequately demonstrated that Portman has failed to establish a genuine issue of material fact as to that claim.  Specifically, they have established that no genuine issue exists as to whether any FMC-Lexington medical official was deliberately indifferent to his serious medical needs, and that they were not personally involved in any of the medical decisions, or any other conditions of confinement, about which Portman complains.

In support of FMC-Lexington's argument that Portman has not established an Eighth Amendment claim of deliberate indifference to his serious medical needs, they have filed, under seal, the Declaration of Dr. Francisco Rios, who was Portman's primary care physician at FMC-Lexington between January 8, 2009 and March 30, 2009.  [R. 26].  Dr. Rios provided a detailed 11-page chronological outline of the medical treatment Portman received at FMC-Lexington between January 8, 2009 and March 30, 2009.  The defendants contend that based on Dr. Rios' undisputed Declaration, and Portman's own medical records, Portman has alleged, at best, only a disagreement as to the course of proper medical treatment for his various medical conditions, not facts indicative of deliberate indifference under the Eighth Amendment.

During the administrative remedy process, Portman complained that medical staff at FMC Lexington failed to provide medical care and treatment for (1) his trigeminal neuralgia (a pre-existing chronic pain condition that affects the trigeminal nerve) and (2) a left orbital fracture and a nasal fracture he sustained when the inmate assaulted him, which injuries required surgery

to repair his eye socket. Portman specifically alleged that the FMC-Lexington medical staff (a) refused to allow him to be examined and treated by a neurologist; (b) refused to allow an ophthalmologist to treat his eye injuries; and (c) failed to provide him with proper amounts of Neurontin and Oxycontin to treat his trigeminal neuralgia.

On September 23, 2009, Harrell Watts, the Administrator for the BOP's National Inmate Appeals, rejected Portman's final administrative appeal. He explained that, by that time, Portman had been seen by a contract neurologist who evaluated him and recommended a specific medication; that the neurologist mentioned a certain surgical procedure as a potential treatment, but did not recommend the surgery; and that a contract ophthalmologist had examined Portman and determined that his orbital fracture was fully repaired and found no evidence of eyelid or tear duct abnormalities. Watts further explained that the FMC-Lexington medical staff had determined the treatment plan consisting of medications, specialty consultations, and diagnostic tests, was appropriate for Portman's medical condition, and that nothing in the medical records suggested that the medical staff had denied him medical care for his trigeminal neuralgia. *See* Martinez Decl., R. 24, ¶ 9, see also Attachment E: Administrative Remedy 525325-A1.

A plaintiff must prove deliberate indifference on the part of prison officials in order to demonstrate that lack of medical treatment rises to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A plaintiff establishes deliberate indifference by showing that the alleged mistreatment was objectively serious and that the defendants subjectively ignored the inmate's medical or safety needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Thus, the official must be aware of facts from which the inference could be drawn that a

19

substantial risk of serious harm exists, and he must also draw the inference from those facts. *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (citing *Farmer*, 511 U.S. at 834)).

The record in this case contains no material facts which would demonstrate deliberate indifference by any FMC-Lexington medical professional, and certainly not by Defendants Growse, Hoskins, Jennings and Alexakos.  In fact, the record shows just the opposite: that Portman received repeated attention and treatment from the FMC-Lexington medical staff

In his Declaration, Dr. Rios stated that between January 8, 2009 and  March 30, 2009, Portman was seen and assessed by FMC medical professionals, meaning either a registered nurse or physician, more than fifty times, and that after seeing Portman and assessing his condition, these medical professionals either determined there were no significant findings regarding his condition and no apparent signs of distress, or otherwise provided care or referred him for care. According to Dr. Rios, between January 8, 2009 and March 30, 2009, Portman was seen and examined by three specialists – an ophthalmologist (February 11, 2009), a neurologist (February 20, 2009), and an oculoplastic surgeon (March 24, 2009).   During that time period, the FMC-Lexington medical staff collected, and on two occasions processed, laboratory tests; performed and reviewed EKG's on two occasions; reviewed dosages, modified or increased dosages; and provided various medications to Portman on several occasions.

The medical staff also prescribed and provided various medications to treat Portman's complaints of pain (including Percocet), trigeminal neuralgia (including Gabapentin/Neurontin, Prednisone, Loperamide and Tylenol), headaches, hypertension, allergies, nausea, diarrhea, (Promethazine Suppositories),  diverticulosis, a prostate condition and problems stemming from

20

his eye injury.  Portman's sealed medical records substantiate Dr. Rios' outline of the medical treatment Portman received between January 8, 2009 and March 30, 2009.

On February 4, 2009 , the medical staff discovered that Portman had been ignoring his treatment protocol and had not been taking his prostate medication.  *See* Rios Decl., [R. 26, p. 4, ¶ 21].  On February 20, 2009, Dr. Stephen Ryan of the University of Kentucky Medical Center suggested in his "Documents Review Report" that gamma-knife surgery might be an option to treat Portman's possible trigeminal neuralgia condition, *see* R. 2-4, pp. 1-2.8.  But neither Dr. Ryan nor any other medical professional who treated Portman concluded that such a procedure was mandatory or medically necessary.  *See also*, Rios Decl., R. 26, p. 6, ¶ 35.

Following Dr. Ryan's examination of Portman, the FMC-Lexington medical staff began increasing the Neurontin dosage until it reached 3200 mg a day.  [*Id*.].  Dr. Rios noted that although Portman appeared for a sick call encounter on February 25, 2009 complaining of a trigeminal neuralgia attack, diarrhea, racing heart, pain and double vision in his eyes, he was seen walking laps in the outside recreation area of the prison on the same day.  [*Id*., p. 7, ¶ 36].

On March 17, 2009, Portman appeared for a sick call encounter complaining of trigeminal neuralgia pain, left eye pain and spots in his eye, diarrhea, a rapid heart beat at night, and requested a Medrol Dose pack.  [*Id*., p. 9, ¶ 48].  Dr. Rios stated that despite those complaints, Portman did not appear to manifest any apparent distress, and that he was seen ambulating and talking loudly, without difficulty, in the outside recreational area.  [*Id*.].

On March 18, 2009, Portman appeared for a sick call encounter, complaining of a trigeminal neuralgia attack, diarrhea, left eye pain, pressure in his right eye, blurred vision,

21

spiders and dizziness.  [*Id*., ¶ 50].  Portman demanded that the medical staff provide him with a Medrol Dose pack, which he claimed the neurologist had ordered him to take, and change the schedule for administering the Neurontin to him.  [*Id*.].  On that date, the prison staff discovered that Portman had stock-piled various expired medications in his cell, consisting of Loperamide, Phenergan, Prednisone and Docusate Sodium.  Portman was allowed to keep his current medication of Loperamide and Phenergan and was instructed to use them to treat his diarrhea and nausea.  [*Id*.].

Dr. Rios' Declaration and the medical records contradict Portman's allegation that the FMC-Lexington medical staff refused to treat his eye and eye socket injuries.  On February 11, 2009, Dr. Conklin, of the University of Kentucky Medical Center, examined Portman for an ophthalmology consultation.  [*Id*., pp. 5-6, ¶ 27].  On February 20, 2009, the FMC-Lexington Medical Trips Coordinator requested, by facsimile transmission, Dr. Conklin's office to clarify his handwritten notes from that examination.  [R. 2-8, p. 1].  On February 23, 2009, "Jessica" hand wrote the following response on that request:

> "Per Dr. Conklin pt needs to see ocular plastic surgeon to have globe repositioned."

[*Id*.].

On March 24, 2009, Dr. David Cowen, M.D., F.A.C.S.[8] and Medical Director of Oculoplastic & Orbital Consultants of Lexington, Kentucky, examined Portman for a

---

[8]      The term "F.A.C.S." is an abbreviation for "Facial Aesthetics and Cosmetic Surgeon."

consultation which Dr. Rios had requested in order to assess the status of Portman's eye injuries.

In his written report to Dr. Rios, Dr. Cowen stated as follows:

> . . . Mr. Portman indicates that he occasionally has some drainage around the eye and that he occasionally is troubled by some double vision as well as "spiders." **On examination today, Mr. Portman has a superbly repaired orbital floor fracture. I see minimal evidence of enophthalmos**.[9] Extraocular motility is essentially complete, although the left eye is a bit slow in following the right which I suspect is the reason for his occasional double vision**. I did not see any signs of entrapment or other concerning extraocular muscle concerns. I also do not see any evidence of eyelid or lacrimal system abnormalities. In my opinion, he has minimal deficits or complications following his orbital fracture repair. Some of his visual symptoms such as a "spider" are probably due to vitreous degeneration**. Issues like this would be more readily evaluated by Dr. Conklin who has already seen him. Otherwise he appears to be doing superbly.

Dr. Cowen's Report/Letter of March 24, 2009, part of Portman's sealed medical records; *see also*, Rios Declaration, R. 26, p. 10, ¶ 54.

Notably, Portman told Dr. Cowen that he was only "occasionally" troubled by drainage in his eye and double vision, although he alleged in his Complaint that he experienced much more severe problems resulting from his eye injury. Regardless, Dr. Cowen, an ocular surgeon and specialist, concluded that Portman's injuries had healed "superbly" (just one week before Portman was transferred out of FMC-Lexington); that Portman exhibited no symptoms indicating serious complications or abnormalities; and that some of Portman's vision issues possibly resulted from degenerative changes.

---

[9]    Enophthalmos is a condition in which the eye falls back into the socket and inhibits proper eyelid function. *See The Free Dictionary*, http://medical-dictionarythefree dictionary.com.

The Declaration of Dr. Rios (including the narrative and the attached medical records) sets forth extensive and detailed notes regarding dozens of instances where Portman was assessed and treated by medical professionals within an eighty-one day period, including three specialists from outside of FMC Lexington. On the other hand, Portman has filed no response to the Motion for Summary Judgment to dispute either Dr. Rios' explanation of the nature and extent of his medical treatment at FMC-Lexington between January 8, 2009 and March 30, 2009, or his conclusions that Portman was provided with extensive, almost daily medical treatment for both his pre-existing neural condition and his eye injuries resulting from the inmate assault.

Because a district court must examine a motion for summary judgment to ensure that a moving party has discharged his burden, *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991), the Court has again reviewed Portman's Complaint and attached exhibits. The few medical records which Portman attached to his Complaint, such as Dr. Stephen Ryan's February 2009 medical notes suggesting a procedure for Portman's trigeminal neuralgia condition but not insisting on it, do not establish that the FCM-Lexington medical staff was deliberately indifferent to any of his medical needs.

The medical records reveal that Portman disagreed with every aspect of his plan of treatment and the dosages of medication he received at FMC-Lexington, and on a daily basis demanded treatment and medication different from what the FMC-Lexington medical staff determined was necessary to address his complaints. However, the medical records firmly establish that Portman had extensive, direct contact with medical professionals; the FMC-Lexington medical staff exhaustively assessed and monitored his condition and complaints; they

24

provided him with a substantial amount of medical treatment for a number of conditions, including trigeminal neuralgia and the injuries he suffered during the assault; they referred him to specialists for evaluation; and that Portman failed to take many of his prescribed medications.

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976)). "[A] difference in opinion between a prisoner and the medical staff about treatment does not state a cause of action." *Kirkham v. Wilkinson*, 101 F. App'x 628, 630 (6th Cir. 2004). *See also Brock v. Crall*, 8 F. App'x 439, 440- 41 (6th Cir. 2001) (affirming the lower court's dismissal of case where plaintiff saw two physicians over an eighteen month period and the essential dispute was over the diagnosis and treatment).

As noted, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Portman has provided nothing to contradict either his own medical records or Dr. Rios' thorough medical assessment of his conditions and treatment. Therefore, he has failed to create a genuine issue of material fact as to his claim that the FMC-Lexington medical staff was deliberately indifferent to his serious medical needs between January 8, 2009 and March 30, 2009.

Moreover, as to Portman's exhausted Eighth Amendment medical claims, and for that matter, his other seven non-medical constitutional claims which have been dismissed for failure

25

to exhaust, Portman failed to allege how Defendants Michael Growse, Beverly Hoskins, Schmal Jennings and Nicholas Alexakos personally deprived him of any constitutional right. As the defendants have accurately argued, Portman merely lumped all the FMC-Lexington Defendants together and broadly alleged that all of them violated his rights, without specifying what actions, if any, each individual defendant undertook in violation of his rights. *See* Complaint, [R. 2, p. 18-21, 24-28].

At this juncture of the case, Portman's broad, "catch-all" allegations set forth in his Complaint are inadequate to establish *Bivens* liability against any of the FMC-Lexington Defendants. A violation of a person's civil rights cannot be imposed on any defendant absent that defendant's personal actions; a plaintiff must describe how each defendant acted, personally, to deprive a plaintiff of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Nwaebo v. Hawk-Sawyer*, 100 F. App'x. 367, 369 (6th Cir. 2004); *Kesterson v. Federal Bureau of Prisons*, 60 F. App'x. 591, 592 (6th Cir. 2003).

To the extent that Portman has relied upon the doctrine of *respondeat superior* to establish liability on the part of Growse, Hoskins, Jennings and Alexakos, *respondeat superior* cannot form the basis of liability in a *Bivens* action. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Okoro v. Scibana*, 63 F. App'x. 182, 184 (6th Cir. 2003). Supervisor liability must instead be premised on either direct or personal involvement of the named defendant. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir. 1982). *See also*, *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (municipality not liable for civil rights claims based on *respondeat superior*).

26

With respect to his medical care claims, Portman failed to set forth any facts from the relevant period identifying anything that any specific FMC-Lexington Defendant took any adverse action against him regarding his medical care. Portman merely asserted claims against the "prison staff," without identifying who on the prison staff actually violated his right to constitutionally required medical treatment. Although Portman named nine defendants, only Dr. Michael Growse, the Clinical Director, is actually a member of the extensive medical staff at FMC-Lexington. Portman did not specifically allege, however, that Dr. Growse was deliberately indifferent to his serious medical needs, and Dr. Growse cannot be held liable under the Eighth Amendment for other medical staff members' actions under the doctrine of *respondeat superior*.

Beverly Hoskins, Schmal Jennings and Nicholas Alexakos are not medical personnel, and Portman did not allege that any of them, specifically, were involved in his medical treatment. As non-medical prison employees, Hoskins, Jennings and Alexakos would not have been deliberately indifferent to Portman's medical needs for not responding to medical complaints from a prisoner who was already under the care of the medical professionals. *See Harrison v. Ash*, 539 F.3d 510, 518-520 (6th Cir. 2008); *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004). Non-medical personnel are entitled to rely upon the medical treatment provided by the medical staff. *Harrison*, 539 F.3d at 518-520.

Rule 56 requires that a plaintiff present "significant probative" evidence that supports his complaint and demonstrates the existence of a genuine issue of material fact. *Celotex*, 477 U.S. 317 at 324. Portman failed to establish a genuine issue of material fact either on the issue of deliberate indifference to his serious medical needs or on the issues of whether Growse, Hoskins,

27

Jennings and Alexakos were personally responsible for, or even involved in, addressing his medical needs or whether they deprived him of necessary medical treatment. Further, Portman has failed to establish a genuine issue of material fact on the issue of whether these four defendants were personally involved in any of the alleged actions forming the basis of his non-medical constitutional claims which have been dismissed for lack of administrative exhaustion.

All of Portman's *Bivens* claims against Growse, Hoskins, Jennings and Alexakos fail, and the Court will grant the Motion for Summary Judgment. Because Growse, Hoskins, Jennings and Alexakos did not violate Portman's rights guaranteed by the Eighth Amendment, it is unnecessary to address their argument invoking qualified immunity.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     The Motion to Dismiss for Insufficient Service of Process filed by federal Defendants Scott Anderson, Stephen Dewalt, Brian Johnson, Marvin Pitt and Allen Terris [R. 19] is **GRANTED**, without prejudice;

(2)     The Motion to Dismiss or in the Alternative, Motion for Summary Judgment, filed by federal Defendants Nick Alexakos, Michael Growse, Beverly Hoskins and Schmal Jennings [R. 24] is **GRANTED**;

(3)     The Motion for Special Service of Process filed by Plaintiff Carey Portman [R. 34] is **DENIED**;

(4)     This action is **DISMISSED** and **STRICKEN** from the Court's active docket; and

28

(5)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This September 28, 2011.

**Signed By:**

***Karl S. Forester*** *K S F*

**United States Senior Judge**